Good morning. Good morning Judge Reimer, Honorable Court. My name is Clayton E. Kaye. I represent Carol Sussel, the appellant in this matter. I'd like to take the opportunity in my presentation to discuss three issues that we raised on appeal. The first issue is that the jury verdict was against the weight of the evidence and therefore the trial judge should have granted a new trial on the issue of liability. The second point is that the trial court committed reversible error in ruling that portions of the report of the internal Air Force investigation of Inspector General complaints not be disclosed to the jury. And the third issue that I'd like to discuss today is that the trial court committed reversible error in refusing to give a mixed motive jury instruction to the jury on the issue of retaliation. To give you some background, Carol Sussel is a 48-year-old woman of Japanese Chinese ancestry. She has worked in outdoor recreation program at Hickam Air Force Base for over 19 years. For each of those 19 years she was given excellent performance reviews. Denise Hollywood, her supervisor that took on the command in fall 2003, she read the employee survey when she took command. Denise Hollywood also interviewed part-time lifeguards who worked for Carol Sussel. All these lifeguards were Caucasian. These part-time lifeguards who were full-time firefighters complained to Denise Hollywood that Carol Sussel intended to lay them off. They also complained that Carol Sussel discriminated against Caucasians. Carol Sussel's first face-to-face encounter with Denise Hollywood was on November 23, 2003, some months after Denise Hollywood had taken over command. On this first encounter, Carol Sussel was peppered by such questions from Denise Hollywood as, what is your nationality? Are you Hawaiian? Are you local? Did you go to public school? Did you go to private school? Questions that are personal in nature, questions that place one in a racial category here in Hawaii and basically plates her. On December 8, Carol Sussel notified Denise Hollywood that she had selected a part-Hawaiian person named Howard Pittman to serve as a supervisory lifeguard. On December 15, less than a week later, Denise Hollywood called a meeting of the lifeguards only. She would not allow Carol Sussel to attend that meeting and at that meeting, in the presence of the other lifeguards that he supervised, Howard Pittman was asked the question, how many Haoles work for you? On December 19, and Haole is a term, a Hawaiian term, describing Caucasians in the state of Hawaii. On December 19, 2003, Denise Hollywood canceled the selection of Howard Pittman to be supervisory lifeguard. On that same day, Carol Sussel had advised Denise Hollywood that she was going to select two other non-white workers to fill two vacancies that existed in outdoor recreation. The next day, on December 20, 2003, Denise Hollywood ordered that Sussel be transferred from her position as chief of outdoor recreation to a programmer in the teen center at Hickam Air Force Base. Now, that decision was not communicated to Carol Sussel until later. It was not communicated until January 6, 2004, when Carol Sussel was summoned to appear before Denise Hollywood and questioned by Denise Hollywood and two of Miss Hollywood's managers. She was questioned as to whether her knowledge of Howard Pittman's past criminal record. He had served time in jail because he had violated a temporary restraining order to stay away from his wife. She was questioned about rumors that Howard Pittman had slept in the swimming pool at Hickam Air Force Base. She was questioned about Howard Pittman's fitness to be a lifeguard. Mr. Pittman is a large Hawaiian-looking individual and is quite large. She was further questioned and accused of having a social relationship with Howard Pittman. On that same day, after that meeting was completed, Carol Sussel was advised that she was going to be transferred from her position as outdoor recreation chief to a programmer's position in the teen center. At the end of the day, the jury heard all that. Yes. And the jury resolved credibility issues adversely to your client. But my real question is, the jury especially found that the re-detailing to the teen center was not an adverse job action. That's correct. And the district court noted in its ruling that that finding was well supported by independent evidence, that is evidence independent of Hollywood. So even if everything you say about her is correct, let's say she was incredible and biased, the district judge said, but the fact that it was not an adverse job employment action was independently supported and that suffices. So what is your response to that? My response is the district judge was incorrect because as we cited in our cases that are clear that if you are removing an individual for the purpose of punishing them or because of his racial background and you want to make it uncomfortable such that she will leave, and that is what occurred. Well yes, but the jury found that there was no adverse employment action. That is correct. That's not a district court finding. I mean so that's what was found. Yes. And the jury, and that is why we have the second point in that. The second point was that Carol Cecil was removed from her position in the evidence that was clearly established. But in fact, let me get back to the first point. The jury found named this finding but did not have all the evidence that should have been made available to them. Well that's a slightly different issue. I mean, if I understand your position, it is that all, not just some of, the conclusions in the Cox report should have been admitted. But your brief does not indicate what difference you think that would have made in the outcome. So perhaps you might say now why you think I thought I made any difference. Yes, what had happened was the court redacted or ordered the redaction of all conclusions. I know what happened. So my question is why did what happened make any difference in the outcome? Because the jury didn't and the Cox report, the unredacted version is found on page 885 of our excerpts. The redacted version which was presented to the jury is found on page 973. Okay, and why would the jury's verdict have been different if it had had the entire Cox conclusion? Because the jury would have known that the Air Force had made findings that Denise Harwood violated specific Air Force regulations and specific federal law when she acted as she did. They were not allowed to give them this information. They were deprived of that information. When you look at the Cox report, the redacted version, it is bare of any finding as the judge had ordered that specific Air Force regulations that the demotion or the transfer of Carol Sussel from her position as Outdoor Chief violated Air Force regulation that the transfer in of the flight manager into her position after she had been transferred was violated of Air Force regulation. All right, well now was there any evidence put in at the trial other than what Cox thought that the conduct violated Air Force regulations? Yes. Okay, so what difference did it make that Cox thought that? I'm sorry? Apart from the Cox, what Cox thought about whether the conduct violated federal Air Force regulations, was there evidence in the record that in fact the conduct did violate Air Force regulations? The Cox report found... I know that. You could have, apart from the Cox report, presumably had you wished to do so, you could have put on some evidence yourself, direct evidence, not dead evidence from the Cox report, about whether Hollywood's conduct was not permitted by Air Force regulations. So my question is, was there any evidence to that effect? I believe the record is replete with that. Okay, then why isn't the Cox report simply duplicative? Because the Cox report is important because it is an Air Force, it is the results of an Air Force investigation. The Air Force investigated itself and found that there was violation of Air Force regulation, found that there was violation of these all violated Air Force regulations. The jury was not positive, but in addition, what makes this case appalling in terms of the result is that you have a situation where Denise Hollywood first states that she did not use the term Holly when she was investigated by Colonel Cox. She denied she ever used that term. Colonel Cox found, based upon statements made to her by Denise Hollywood, and based upon statements made to her by other persons who were present at the same meeting, that Denise Hollywood was not credible. At trial, Denise Hollywood was asked, why did you use the term Holly when you talked to Howard Bittman? And the response was, I used the word Holly because I wanted to find out the racial background of the lifeguard staff. Because if what they were telling me was correct, that Carol Susser wanted to make the lifeguard staff predominantly non-white. She has admitted that she was using race as a factor in the employment decisions that she was concerned, and indeed, that she did. May I ask you a question about the termination? At the time that Ms. Susser was terminated, Ms. Hollywood was out of the picture and had been out of the picture for a while. And so, with respect to whether it was retaliatory, the only, and thus you were entitled to a mixed mode of instruction, the only evidence I saw was that Mr. Faria had some knowledge or was aware of Ms. Susser's complaint. I guess my question would be, was there any other knowledge of the protector, any other evidence that it was, the termination was retaliatory? And are you aware, or could you cite cases where mere awareness of the fact that a complaint had been filed is sufficient, a sufficient basis? Your Honor, it was not mere awareness. Mr. Faria was one of the managers that was present when Ms. Susser was questioned, interrogated on January 6, 2003. Larry Hellerman was another manager that had been questioned, was part of that interrogation. When Ms. Susser filed her discrimination complaint, she lines it against all three individuals. So, you have Mr. Faria, Colonel Hollywood, and Mr. Hellerman, all being named in discrimination complaints, all being named in Inspector General complaints. We had proper evidence that all these individuals were interviewed by the, first the EO Counselor, then the EO Investigator, and then by Colonel Cox in her Inspector General report. What you had is, and then we offered evidence about statements that were prejudicial to, that were statements of bias made by Mr. Hellerman about Carol Susser while Carol Susser was on sick leave. And the pivot, and the reason why we asked for the Carol Susser, because she was absent from work in the period of September 2004 to December 2004. And they proposed that as a basis of removal, and the proposing person was Mr. Faria. The person that ordered the removal was Mr. Hellerman, except on the same, except evidence was also presented that in March 2004, 2005, excuse me, Frank Faria sent a letter to Carol Susser advising her that her request for FMLA leave had been approved, retroactive to December 2004. So, what you had in effect is the, for the same period in which she had authorized FMLA leave, she is ordered removed because of absences, because she did not, so you have a situation where obviously there's a legitimate reason and there's a non-legitimate reason, and we felt that it would be appropriate under the Head Case to grant a mixed motive jury instruction consistent with the Desert Palace case that had been decided. I'd like to hold my other time for rebuttal. If I may? Certainly. Ms. Green. Good morning, Your Honors. May it please the Court. My name is Melinda Green, and I represent the defendant in this action, the Secretary of the Air Force, Michael Winn. Your Honors, the trial judge was correct in denying Ms. Sussel's motion for judgment as a matter of law. Additionally, he gave the appropriate jury instruction, the single motive instruction. Additionally, as this Court has pointed out, the other evidence remaining, whether it was excluded or admitted erroneously, as Ms. Sussel claims, they have not made any showing how that evidence would have affected the outcome of the verdict as it doesn't relate to the issues ultimately decided by the jury. With regards to the judgment as a matter of law, Your Honors, Judge Reimer, as you've pointed out, the jury verdict was supported by substantial evidence, and in fact when you look at the judge's motion denying the motion for a judgment as a matter of law, he uses such phrases as a strong case presented by the defense, extensive evidence, substantial credible testimony, and significant evidence. Moreover, of course, as this Court is aware, is they're really precluded from asking for judgment as a matter of law because they failed to ask for a motion under Rule 50A during trial, which means the only standard at which this Court can review it at this point is there an absolute absence of evidence to support the jury's verdict. And as Your Honor pointed out, the judge found substantial credible witnesses, especially in the form of Jan Kuniyoshi, who was a civilian personnelist with over 30 years experience, who explained the personnel system and also explained that detailing is very common within the Air Force and that the commander, it's a flexibility that the commander has to do that, and that in the personnel world it is not considered an adverse action. So the jury heard substantial evidence to support that finding. I think it's also important for this Court to understand the context of the four questions that ultimately were decided by the jury because what was obviously a contentious issue at trial, as has been articulated in their brief and even in argument today, is the idea that the commander had a bias against people of Asian or Pacific Island ancestry. But when you look at the four questions that were ultimately decided by the jury, really that only has to do with one of the questions, and that was the first issue with regards to whether her race, color, or national origin was a factor in the decision to detail her. But again, the jury had to jump through the first hoop, which is deciding whether it even constituted an adverse action. Once they decided that it was not an adverse action, they never even had to get to what the commander, Lieutenant Colonel Hollywood's motives might have been. And so all of this argument about her alleged biases and that she's not credible really have no bearing at this stage because the only issue the jury decided with regards to Lieutenant Colonel Hollywood is that first issue. There was a second disparate treatment claim with regards to her removal, your honors, but again the situation, as the court has pointed out, was that the commander, Lieutenant Colonel Hollywood, ironically had been detailed herself out of her command to a superior command, and so she was not involved in the decision to terminate Mrs. Sussel's employment. So again, all of this hoopla about Lieutenant Colonel Hollywood and her is not important at this stage because the jury never had to reach the issue of her credibility or her alleged biases. Why isn't the involvement of Mr. Faria in the termination decision enough to support a mixed motive instruction? Your honor, as you pointed out, there is no case law with regards to mere awareness being enough to overcome that burden. Now, when we look at the mixed motive versus the single motive standard, this court has held in Costa versus Desert Palace that the trial judge must assess the evidence that comes out at trial to determine what jury instruction is supported, and in the Galdamez versus Potter case, this court held that a party is entitled to the jury instruction of their choice so long it is supported by law and evidence, and our argument, your honor, is that there was no evidence that her protected activity was considered at the time of her removal, and even in cases when they talk about mixed motive perhaps versus single motive, a lot of those have to do with the summary judgment context, and in the summary judgment, obviously the plaintiff is going to get the benefit of the doubt and the court will infer causation, particularly if it's close in time, but this is obviously not a summary judgment context, and accordingly, they're not entitled to that benefit of the doubt. They had ample opportunity for discovery and to present evidence that there was some comment or anything of that nature, which would even give them some circumstantial evidence that her protected activity somehow played a factor in her termination, but again, as the judge held, there was significant evidence that the reason she was terminated had to do with the fact that she was in an absence without leave status for three months. She failed to show up to work when she was ordered to on two different occasions, and she failed to provide medical documentation. It's also worth noting that in their reply to the proposed removal, Mrs. Sussell did not contest any of these issues, so again, if they were able to show pretext at some point that these were not the actual bases, perhaps that might have supported a mixed motive instruction, but again, your honors, they presented no evidence. In contrast, the Air Force presented specific evidence on this point to demonstrate that her protected activity was not considered. You had the proposing official, Mr. Faria, who testified that he did not consider it and that he based it solely on what was listed in the proposed termination, and even if you were to say, again, if you were to second guess his credibility, which this court obviously doesn't really do, but even if the jury had not believed that, they also had the testimony of Kathy Shojinaga, and Ms. Shojinaga was a management employee relations specialist who advised Mr. Faria and Mr. Heilman throughout this process, and Ms. Shojinaga, again, a personnelist with over 20 years experience, said that she was not aware herself of the protected activity, and she never heard Mr. Heilman or Mr. Faria mention the protected activity, so again, I would just remind this court that the standard of review at this point is, was it an abuse of discretion for the judge to choose the single motive instruction, and as Mrs. Sussell came forward with no evidence regarding her abuse of discretion, she did not make that decision. With regards to the commander directive investigation, again, briefly, your honors, as the court pointed out, again, of the six claims that Mrs. Sussell is now claiming were reversible error, two go to the detail and four go to Lieutenant Colonel Hollywood and her alleged biases, and I would also point out that one of the alleged biases actually did appear in the final exhibit, so really there's only three that are left on that side. Again, because those go towards her alleged bias, and the jury never had to reach questions about Colonel Hollywood and her bias, those would not have affected the jury's outcome because the jury never had to decide any issues based on Lieutenant Colonel Hollywood. So really what you're left to is the detail, and Judge Reimer, as you that they wanted, that the detail was somehow inappropriate, they could not have been prejudiced by the exclusion of a couple of lines of the 45-page report. In addition, again, we would rely on the testimony of, excuse me, of Jan Kuniyoshi. I apologize, your honor, I have a cold. We rely on the testimony of Jan Kuniyoshi, who said that, again, detailing is very common. In fact, the wing commander for the entire 15th Air Wing, Colonel Torres, also testified that a commander like Lieutenant Colonel Hollywood has wide discretion in how to run her organization. Your honors, unless the court has any more questions, I believe we've given appropriate highlights. I think not. We just asked that the court deny Mrs. Sussel's relief, as the jury heard plenty of evidence to support its verdict, and that the judge gave the proper instruction, and we ask that her relief be denied. Thank you, your honor. Thank you, counsel. Thank you, your honor. I'd like to just speak to the jury instruction, the mixed motive. It is our contention that the judge had before him, we requested a mixed motive. The judge, relying upon a note in the model jury instruction, advised that it had not been decided by the Ninth Circuit, at least at his reading, as to whether a mixed motive was appropriate for a retaliation claim. And as a result, the judge, despite our arguments, gave a but-for jury instruction on the retaliation claim. In answer to your question, Judge Ikuda, I would point out that Mr. Faria and Mr. Hellerman were not bystanders to Mrs. Sussel's prior complaints of discrimination. They were named parties. They were questioned at least three times, by first the EO counselor, the EO investigator, and Colonel Cox, as to their involvement in the wrongful removal, the wrongful transfer of Mrs. Sussel, and the race-based reasons that had been alleged. At the time, and as we pointed out in our brief, Frank Faria sent a letter and proposed Mrs. Sussel's removal for her absence for the period of September 2004 to December 2004. On March 2nd, Kathy Sojumaga testified that Frank Faria sent a letter to Carol Sussel stating that Carol Sussel's request for FMLA leave had been approved retroactive to December 2004. March 8th, after Frank Faria had sent that letter, Larry Hellerman removes Carol Sussel because of her being absent for the period of September 2004 to December 2004. So you have a situation where she's being removed for a period in which she is granted FMLA leave. And finally, after she was removed, there was a second complaint based on retaliation, and we felt that given these facts, given their involvement in the first complaint, that there was sufficient evidence to warrant a mixed-motive jury instruction. Thank you. All right, thank you, counsel. Both of you. The matter just argued will be submitted. We'll next to your argument in Livonia versus Trumsville.
judges: Goodwin, Rymer, Ikuta